Good morning. May it please the court. My name is James Hamilton and I represent the appellants in this matter. I would like to take 15 minutes to open and then to reserve five minutes. There are two issues in this court. The first issue is whether a class three monopoly that is given by proposition 1A and the compacts violates IGRA. The second issue is if proposition 1A and the compacts do not violate IGRA, do they violate equal protection principles? Counsel, before you get to that issue, I'd like to ask you briefly about one that is not really much raised here but was discussed in the district court, and that is the question of standing and redressability. What is the remedy or relief that your clients seek? And if they were to receive that relief or remedy, would that redress their grievance? Yes, that issue was addressed by the remedy that is sought here is basically the invalidation of the compacts. A determination by this court that the governor was wrong to sign the compacts and that the secretary of the interior was wrong to approve the compacts. How would that help your clients? They would not be allowed simply by that to engage in additional activities. Well, they may not by that ruling not be allowed to engage in additional activities, but it would level the playing field. It would remove the discrimination that they are facing because they cannot engage in the type of class three gaming that the tribes may engage in under the compacts. If I may turn to IGRA. As the district court found, if a state has authority to create a class three monopoly, that authority must be found in IGRA because no other law allows this. But as this court said in Williams v. Babbitt, if Congress had intended a monopoly that perpetually excludes a majority of the people in a state from an economic sector, Congress would have spelled this out. Congress did not do this in IGRA. There is nothing in IGRA that expressly authorizes the states to give the tribes a monopoly. Indeed, the district court agreed that Congress did not specifically contemplate a monopoly for tribes, but said that the language of the statute is capacious enough to allow that result. Well, counsel, that's sort of my problem with it. Just speaking for myself, I would have to say that from the statute as a whole and the legislative history, I think it's 75 percent likely that Congress had in mind what you think they had in mind, but they didn't say it very clearly. And if there's any rational way to view it another way, don't we have to apply the principle of statutory construction in favor of Indian sovereignty and Indian tribes? I think you do not. There's also a statutory construction principle that says you should avoid interpreting a statute to raise serious constitutional issues. And if you interpret this statute, if you interpret IGRA to allow a monopoly, you will raise serious constitutional issues, which I wish to discuss in a moment and which, of course, we've discussed in great detail in our brief. Why would you not be obliged to apply the Indian preference statutory construction? Because I think the most prominent principle of statutory construction is the principle that you avoid constitutional problems. And if you interpret the statute the way the tribes and the state and the federal government would have the statute interpreted, a serious constitutional issue arises. Personally, I've always viewed that as completely circular. Again, just speaking for myself, it seems to me that a statute means whatever it means. And once you decide what it means, it's either constitutional or it's not. And in deciding what this one means on its own terms, I have some difficulty reaching the idea that it's not ambiguous, even though I agree with you that it's more likely that it means what you would like it to mean. It seems to me ambiguous. Well, this Court in the Rumsey case said it was not ambiguous. And we think that you I said it was not ambiguous with respect to the particular issue before that Court. They didn't say everything about the statute is absolutely clear, that every issue that could be raised is resolved. But in that Court, Judge Reinhart, the provision being interpreted was the permission, the state permission requirement. And the Court there said very clearly that what this provision means is that tribes can engage in the types of gaming that others can engage in. And, indeed, this But they didn't say what others was. They said that if I recall that case, the issue was whether it had to be the specific games or it could be the class of games. And they found that in that respect, the statute was clear. I believe in the context that the Court was speaking, it was clear when they said others, they were speaking about non-Indians. And, indeed, in recently in the Enry Gaming case, this Court repeated the language from Rumsey. I do think that what the District Court has done is to reach a rather odd result. The District Court has interpreted the statute to mean something that Congress did not contemplate and thus had no intent to ordain. Now, what IGRA does say is that tribal class three gaming is lawful only if these activities are located in a state that permits such gaming for any purpose, for any, by any person, organization, or entity. As we explained in our briefs, the state So if it prohibits it for everyone, including Indians, they're not required to negotiate with Indians. Because the later section says that when there's a proposal for land, for gambling on Indian land, that then the state must meet and negotiate a contract. But that's not true if the state law permits it. Well, I'm not sure I completely understand your question. My interpretation of that provision is that what it means is that the state must permit class three gaming for other people besides Indian tribes. The question is, why wouldn't it apply? If the state doesn't permit it for anyone, including Indians, then they don't have to enter into a compact when the Indians request one. But if they do permit it for Indians, then they must meet and confer and agree upon a compact. Well, Judge, this again is a question of statutory interpretation. That's one possible interpretation. That may be one possible interpretation, but I don't think when you look at the language of the statute, when you look at the legislative history, that that interpretation is a possible interpretation. We think that the court's interpretation in Runcie, the common sense interpretation, that tribes can conduct the gaming that others can conduct, is the right way to read this statute. And as we explained in our brief in some detail, that the district court's erroneous interpretation would give the permission language a different meaning than the same words have in other parts of the statute as to class two gaming. This interpretation, the district court's interpretation, is inconsistent with the common sense reading of the amended Johnson Act requirement that slot machines be legal in a state before tribes can operate them. And also the district court's interpretation makes the permission clause of the statute circular and redundant. The legislative history that I referred to shows very clearly that Congress did not intend a monopoly for tribes, that Congress wanted a fair balancing of competitive economic interest, and that Congress wanted free market competition. The legislative history shows that Congress wanted tribes to be able to compete on an equal footing and on a level playing field with non-Indian entities. Because this legislative history plainly shows that there was no intent to ordain a monopoly, it is wrong to misinterpret a statute that was intended to prevent discrimination against Indians as one that allows a monopolistic discrimination in favor of the Indians. Would you agree that it's pretty ambiguous as to what Congress intended? I do not think it's ambiguous as to what Congress intended. When you read the legislative history in the language of the statute, it is totally clear that they were not intending to give tribes a monopoly. They don't say that. What they do say, Judge Rhodes, is that they wanted, and this is in the Senate report, they wanted a fair balancing of competitive interest and they wanted free market competition. Those words are inconsistent with the notion of a tribal monopoly. Now, if we are wrong about this, and if IGA really does allow a monopoly, then this statute presents serious constitutional problems. Now, we recognize that Congress may give status as a separate people. The Supreme Court said this in Montcari, but there are limits to the preferences that can be given. In Montcari, Justice Blackmun said that if the preference involved did not concern hiring at the BIA, but instead concerned government-wide hiring, a more difficult question would be presented. And I submit that there would have been a different result if the preference involved air traffic controllers or prison guards. Well, one fundamental difference between that situation and what we're talking about is they're not proposing to say that only members of Indian tribes can conduct gambling operations throughout the state of California. What we're talking about is whether on Indian reservations certain activities can be permitted, conducted, that are not committed, that are not allowed elsewhere in the state. So it's not the fact that you're giving Indian members of tribes the right to do something different throughout the state. It's a question of whether you can limit activities throughout the state without limiting them on an Indian reservation also. Well, Judge Reinhart, with all deference to the view you've just expressed, Indian casino gaming, while conducted on the reservations, is a state- It wasn't a view. It was just distinguishing that from the comments of Justice Blackmun. I'm sorry. I said it was not a view on anything that I was expressing. I was just distinguishing the California law from the situation posed by Justice Blackmun. Well, Judge Reinhart, I think what California law does is that it says that tribes may conduct gaming on their reservations and nobody else in the state may conduct such gaming. And this, we think, violates equal protection principles. California is saying tribes have a green light, others in the state have a red light. Are there no situations in which a state could make that as a rational choice? For example, I think best by examples, which may frustrate everyone, but let's suppose that a state made a determination that it wanted to retain all possible agricultural land just for agricultural purposes and there couldn't be any horseback riding activities. But if people want to go horses, that's still going to be permitted on Indian land. Can a state make a choice like that ever? In other words, is there any potential rational basis to limit a type of activity to land that's under Indian jurisdiction only that happens also to be within the state's borders? I would think in the example you gave, the state could not do that. The state could not say that only horseback riding could take place only on Indian land, but nowhere else in the state. Even if they had good reasons and lots of legislative findings about why that was an important idea? I think that the state could not do that unless there was some type of compelling state need and the discrimination was narrowly tailored. That brings me to the question of what is the standard of scrutiny that we should apply and why? The standard is this. There are some cases that have interpreted your decision in William C. Babbitt to require strict scrutiny, but whether it does or not, what this court has got to decide is whether the preference relates to a uniquely Indian interest and whether it relates to Congress unique obligations to the Indians. In Williams v. Babbitt, this court said that casino gaming, tribal casino gaming, does not relate. That was dicta, wasn't it? It was dicta, but it was dicta in reaching the conclusion that the statute involved did not allow monopoly. What does unique Indian interest mean? What does that mean and where does it come from? Is that something that just came up in the case of Williams or was before? What does it mean? The term uniquely Indian interest was from the Williams case. Of course, in Mankari, the court used the term unique obligations to the Indians. I think what Judge Kaczynski was doing in the Williams case was just adapting a permutation of what the court said in the Mankari case. But in the Williams case, Judge Kaczynski cited a number of statutes that are in Title 25 that relate to preferences to Indians regarding Indian land, Indian culture, Indian government. Well, does it make a unique Indian interest because it happens on Indian land? Does that make it unique? Well, if something were confined only to Indian land, perhaps. But as I have said, casino gaming is not confined only to Indian land. The tribes advertise throughout the state. They send buses out to bring people into the state. And moreover, the discrimination, of course, is not defined just to Indian lands because the discrimination affects what people can do throughout the state. In footnote 59 of Judge Levy's very fine opinion, I'm not saying I agree with it, but it's a fine opinion. He did a lot of work on it. It states, if there is to be a more stringent unique Indian interest test for determining the standard of equal protection review, the development of such tests must await further guidance from the Ninth Circuit or the Supreme Court. What kind of guidance would you suggest we make if we follow that suggestion? I think what this court should do is follow Williams v. Babbitt and determine that casino gaming is not a uniquely Indian interest. Let me read you a sentence from that case you think we should follow. Judge Kaczynski's opinion says, legislation that relates to Indian land, tribal status, self-government, or culture, carries rational relation tests because such regulation is rooted in the unique status of Indians as a separate people with their own political institutions. The last part's a quote after the because. But he says if it relates to Indian land, as opposed to the issue before him there, which was whether every Eskimo or every native Alaskan could engage in a business anywhere throughout the state that no one else could. And then he distinguishes it by saying that legislation that relates to Indian land or status or self-government is different than the subject to the rational basis test. Well, my comment on that statement is this. First of all, as I've said, casino gaming does not relate only to Indian lands. It is a statewide business. When I came in from the airport yesterday, there's a billboard by the airport advertising the Cache Creek Casino. That casino and others send out buses to bring customers to their casino. That doesn't make it extraterritorial outside the borders any more than Nevada sending brochures to the Utah potential customers makes the casinos exist in Utah. I guess I really don't understand that argument that advertising outside Indian territory makes the gaming outside of Indian territory. Well, the gaming is conducted on Indian lands, but the gaming business is conducted throughout the state. And as I have said, the discrimination against my clients and others pervades the state. The other thing I would point out about Judge Kuczynski's opinion in Williams is that he specifically said that casino gaming would violate, would not involve uniquely Indian interest or Congress's unique obligations to the tribes. Judge Kuczynski in the court, of course, was well aware when he said that, that casino gaming can only be done on Indian lands. So he must have himself thought that the casino example did not fit into the rubric that he had set up where preferences would be allowed on Indian lands. That wasn't a California case, so he couldn't have been thinking about the California setup specifically. The case came out of Alaska, but he was, I think, making a general comment that certain economic activities, and the other one he suggested was the space shuttle, could not be the subject of an Indian preference. I mean, Judge Craver, there are a number of activities that obviously could be conducted solely on Indian lands. Pro sports, wineries, biotech labs, internet sites, but clearly it would be unconstitutional to say it is okay to have car dealerships on Indian lands, but no-cost dealerships in the rest of the state. And that is, in effect, what California has done. California has said casinos are fine on Indian lands, but no casinos in the rest of the state. And I think that that prescription by California, which has been approved by the federal government, violates equal protection principles. In Cayetano, the Supreme Court said that Mankari was a limited exception to equal protection jurisprudence. And indeed, that case said that Mankari would not only allow tribal Indians to vote. This court just recently, in the Malabed case, also confirmed that Mankari has a limited reach. I think the question for this court is, what is that reach? What are the limits? And I would suggest that the standards that have been set forth in Williams and in Mankari, uniquely Indian interest and relating to Congress's unique obligation to the Indians, are standards that can prescribe what the limits are. And certainly, the casino example, as Judge Kuczynski said in the Williams case, goes beyond the boundary of what preferences can be given. Now, I'll be happy to answer any more questions the court has, but I would like to say five minutes. Well, you're two minutes, three minutes over, but we'll still give you five minutes. Thank you, Judge. I appreciate it. Ed Brennan Good morning, Your Honors. I'm Ed Brennan. I'm an assistant United States attorney from the Eastern District of California. I represent the federal defendants. With the court's permission, I would like to divide the argument with Mr. LaForestier from the California Attorney General's Office. I will be focusing on the statutory interpretation question. Mr. LaForestier will be addressing the Equal Protection Clause issue. Judge Kuczynski All right. Well, you can still try to keep it to 20 minutes, but we won't hold you to a rigid limit. This is an important case, and we give your opponents over 25 minutes, so we'll certainly give you 25 if you need it. Ed Brennan Very well, Your Honor. As to the Indian Gaming Regulatory Act, the core of this dispute, Your Honors, is what meaning this Court should give the words any and permits in this particular statutory phrase in question, that is, that the tribal class through gaming must be, and I'm quoting, located in a state that permits such gaming for any purpose by any person, organization, or entity. Judge Kuczynski Do we have to agree with you that that's the most likely meaning, or do we just have to agree that it's a plausible meaning? Ed Brennan I think under either, the Secretary's decision in this case has to be affirmed. As Your Honor indicated previously, the rules of statutory construction do favor the meaning that was given to these words by the Secretary and also by the District Court in Judge Levy's opinion. But as to the plain, I want to first, if I may, address the plain meaning of these terms. Judge Kuczynski Well, let me just say, in context, as I read the whole statute and the chunks of legislative history that have been referred to, it looks most plausibly as if it were intended to be a most favored nations clause. You can't keep Indians out of anything that you allow to other people because that would be unfair. And for example, pointing to the state's expertise in a state like Nevada, which knows how to regulate gambling, it suggests that they have in their heads the idea that you can't allow churches to do bingo but not Indians to do bingo. But it doesn't matter if that was subjectively in their heads, I guess, is your point. If the words they chose are broader than that, then the words are broader. Justice Breyer Precisely, Your Honor. The plaintiffs focused on the words any and the word permits to argue that they have to be read in a way that you exclude Indian tribes from any entity. To reach the conclusion that they suggest, you have to insert into the statute the additional phrase other than an Indian tribe. But of course, the statute doesn't say that. It doesn't say all persons. It doesn't say all entities. It doesn't say all organizations. It says any. Justice O'Connor Well, it's a locational description, and either interpretation requires us to do a little something because what you're saying is Class III gaming is lawful on Indian lands if such activities are located in a state that allows them on Indian lands, which is also not what it says. But I suppose the point is that either is possible. Justice Breyer Correct, Your Honor. As to the word permits, the plaintiff's argument is that you have to read permits together with any and reach the conclusion that that necessarily excludes Indian tribes because in their view, California law can have no application on Indian lands. But of course, we know that that's not correct because this amendment to Title 18 and specifically Title 18 United States Code Section 1166 incorporates and makes applicable in Indian country the state's statutes as they regulate to gaming. And even pre-EGRA, under the Capazon test, Public Law 280, Congress specifically made applicable California's prohibitions within Indian country. So we know that California clearly has a choice here. It can either consent to the gaming or it can go back to its status quo before Prop 1A and have a constitution that clearly prohibits Nevada-style gaming and penal code provisions that prohibit slot machines and prohibit banked games across the board. That would prevent and preclude Class 3 gaming in Indian country. But I want to... Justice Breyer Where does it say anywhere in any of the documents, legislative history, that Congress intended to create a monopoly for the Indians? Justice Breyer Well, I don't think it says it intended to create a monopoly. It used the language that it used and it specifically provided that if gaming is permitted to any entity, then it will be lawful for tribes to engage in those forms of gaming. Justice Breyer Would you agree at best it's ambiguous? Justice Breyer Your Honor, I don't think that it is because, in fact, Rumsey examined this very term, permits, and it defined it. And it said it has to be given. It specifically stated it's not ambiguous. It stated it must be given its ordinary... Justice Breyer I'm sorry, Your Honor. Justice Breyer The word permits is not it. Justice Breyer Correct. That the word permits must be given its ordinary dictionary definition. And this includes, and I'm quoting, to suffer, to allow, to consent, or failure to prevent. Justice Breyer What about in the Senate report, I think it was the Senate report, that the counsel seemed to suggest they wanted a free market and they wanted to give the Indians a level playing field and no more. Justice Breyer Well, I certainly agree with Judge Levy's conclusion that it probably was not in the forefront of Congress's mind that a state might actually be willing to give tribes more than what EGR was forcing them to give. But there's nothing in the statute that forecloses or prohibits a state from doing so. Justice Breyer But doesn't the report say that? Doesn't the report suggest that they wanted to have the Indians have an opportunity to compete, but no more? Doesn't that... Justice Breyer No, it doesn't say no more, Your Honor. I think what it supports is the conclusion that was in fact reached in Rumsey, that states would not be allowed. The concern is that states not be allowed to protect their own licensed franchises or entities that the state might license to engage in Class III games, and then refuse to negotiate with tribes over those very games. Plaintiffs, I think, concede, Your Honor, that if the California Lottery Commission were authorized to have a half a dozen slot machines, and were authorized to have a half a dozen house-banked card games, that at that point, the state would have accomplished indirectly exactly what the state did directly here in Proposition 1A. The state would now be a state in which those games have been authorized or permitted to an entity. And under Rumsey, and under this specific provision of AGRA, California would then have to negotiate with the tribes over those very games. Justice O'Connor It's... I guess the Indian preference, which I'd like you to talk about in a minute, seems to me to be the pivot point of it. Because like Judge Rhodes, I read the reports as assuming, even though it's really never stated this way, assuming that this is intended to equalize the position of Indians with other citizens within the states. For example, where they talk about the concerns of the states that have regulations relating to sophisticated forms of gaming that they couldn't now regulate in the same way on Indian applicable here, is it because it is on Indian land? Is that sort of the beginning and the end of it? Justice Kennedy You're referring now to the Mancari issue, Morton v. Mancari? Justice O'Connor Yes. Justice Kennedy Yes, Your Honor. And I think that was precisely the point that Judge Kaczynski was making in his opinion in Williams. Significantly, in Judge Kaczynski's opinion, there's a footnote where he runs through two dozen examples of Indian preferences. And he points out that the situation under the Alaska Reindeer Act was remarkably different from those examples. Because in every one of those examples, there was a concern over tribal lands, tribal governmental status, the types of things that he identifies as uniquely Indian interests. And plaintiffs focus on the gaming, but they ignore entirely its nexus to the tribal lands and the fact that it's tribal governmental entities that are being authorized to engage in the gaming. When you look at the two dozen examples that Judge Kaczynski points out in his footnote six, you can go through each and every one of them and make the same comment that the providing housing, there's nothing uniquely Indian about providing programs for protection of violence against women. There's nothing uniquely Indian about biomass energy. There's nothing uniquely Indian about community youth services. It's the fact that these are tribal programs. These are activities on tribal lands that makes it uniquely Indian. In each one of those examples, and I haven't gone through them recently, but the example for the first one, education programs on Indian land, that's not prohibiting anybody else from doing anything. No, but there is a specific preference that was being challenged as violative of equal protection. And the point that Judge Kaczynski is making is that you have to determine what is the basis, what is the level of review? Is this a race-based classification or is this a preference or a classification that is based upon the tribal government's governmental status? It's a preference in favor of a political entity, not in favor of individuals based on race. Well, how does having a casino develop Indian culture or Indian sovereignty? Well, Congress specifically noted when it enacted EGRA that it was enacted to benefit the tribes, to promote tribal self-government, to promote tribal economic development. The economic development, it seems to me, is probably the most rational and likely of the real purposes because it's a big moneymaker. But that, I think, gets you into difficult turf, from my perspective, because it gets you right into the argument of, well, let's suppose that being a chiropractor is really lucrative in California or Arizona. Why don't we just let only on Indian lands can chiropractors operate? And they'll really make a lot of money that way on Indian land. Can the state do that? Well, that's not what happened here, Your Honor. What happened here is that California agreed to enter into a compact with other governmental entities that they can indeed engage in activities on their tribal lands. Well, that's what Mr. Gravey's question is, but it's a constitutional question. If you want to answer it, you may or you can reserve it for you. But I don't want to trespass too far into Mr. Compact. So you have a compact to have chiropractors or a compact to have only auto dealers or whatever it is. But as I said, I think if you want to answer it, it's a basic question. Can anything, can the state, if Congress authorizes it, could the state limit any activity to Indian land that was a moneymaker? Any activity is so broad, I'm hesitant to answer. No automobiles. No automobile manufacturing plants except on Indian territory. I think that Congress does have plenary authority to enact programs or to identify particular enterprises where it is and it would be substituted. It's actually a preference. It's a monopoly. Well, the activity here, though, what's significant, the significant distinguishing feature here is that it's activity that the state has consented to that will be performed on the tribe's lands. Yes, that's what I'm saying. If Congress passes a statute like EGLET and says the states may do this with respect to any industry and they say that the activity of manufacturing automobiles may be conducted only on Indian land. Well, if the state wants to prohibit the manufacture of automobiles, then it would do so. But what I think would create the more significant equal protection issue is if it said that only Native Americans as a race, individuals who are Native Americans. That issue we're not dealing with. That's a different question. Whether they could say only Indians may operate gambling casinos and they could be located in the heart of San Francisco, the heart of Los Angeles. That would be a totally different problem. This is a problem of whether Congress and the state can say any business activity can be limited to the site of an Indian reservation because it will produce a lot of revenue for the tribes. Yeah, I think the state does have its police powers to prohibit activities that it deems appropriate to prohibit. But that's not what money does. It allows it in one place and prohibits it elsewhere. Precisely, Your Honor. The state can prohibit an activity, but then it can also agree that as to the tribal lands, it will consent to that same activity by tribes on tribal lands. It's like zoning in someone else's territory. I mean, clearly someone could say car manufacturing only in industrial zones, but once you then say the industrial zone is in the territory of the tribes and not in the state, that seems very peculiar. But here's this distinguishing feature. Congress has specifically authorized the states and the tribes to do this. Does that make it right? Just because Congress says so or the state agrees to it? Does that somehow make it constitutional? It does, Your Honor. Why? Because of Morton v. Muncarry. If it's an area that falls... What were they dealing in that case? They weren't dealing with not allowing somebody to have a It's not a preference. That's the wrong word. We try to deal with things by saying the quotas, preferences. It sounds a lot better when you say preference. And, you know, you can make a distinction. But you have to show there's a distinction. This isn't a preference. This is a monopoly. It's an exclusive right. That's not a preference. But is there anything particular, I suppose, was a question that we were getting at about gambling that's different from other industries? Are you just saying it's no different from giving an exclusive monopoly over gambling than it would be over any other business? Is there anything different about the state's power to do that with gambling? Well, certainly the evolution of this, of IGRA, began with tribes engaging in regulating gambling and giving monopolies over gambling as opposed to ordinary business. I mean, you can say no. You can say yes. I think that Congress has the authority to identify particular areas in which it wants to allow tribes to engage in and indeed give tribes the advantage to be hired as employees or get promotions in the Bureau of Indian Affairs. That's entirely different than allowing in a monopoly, don't you think? Well, but what was important in Monterrey was that it was a distinction that was being made in favor of a tribal government. It hasn't been decided since then? That's a limited distinction? Well, I don't think so, Your Honor. There are many, many post-Morton v. Monterrey cases that granted a monopoly where they said, okay, that's okay. You can take away the right of other people to engage in a business just because you are a unique situation and we owe certain obligations to the Indians because of what we did 100 years ago. I'm not aware of monopoly cases, Your Honor, but what California did here is not to take away what other entities were already engaged in doing. It agreed to change its constitution and to change its penal code to remove a barrier to the governor entering into compacts that would allow tribes to engage in the form of games they wanted to engage in on their tribal lands. Don't you agree, though, that if you're running an operation, a casino that has slot machines and you're running one that you can just play limited games, that the one that has slot machines is going to make more money and attract more people? Absolutely, Your Honor. So isn't that a monopoly to that extent? Well, to that extent it would be, Your Honor. And why is that right? Well, it's because under Morton v. Monterrey, those kinds of... That was given a job to an Indian in the Bureau of Indian Affairs. It's a very limited situation. Your Honor, I respectfully disagree. I think that the distinction that was made in Morton v. Monterrey and many of the cases since is that where Congress is conferring some type of benefit on an Indian tribe, that is not a race-based classification. That is a preference just as though a state were giving a particular benefit to a municipality or a county or any other political entity. The issue for me seems to boil down to whether that preference can be based on a purely economic question. And the reason I say that is economic development is certainly appropriate for Congress to turn its attention to with respect to Indian tribes. That's obviously an important question. But if that's the only driving force, there's really no limitation. I mean, the states and Congress could look at any money-making operation, gambling, car manufacturing, whatever your imagination can say, and if it makes money and therefore fulfills the economic development purpose, then a state and the government could agree to allow it only on Indian land. And I guess that's the fundamental difficulty that I have with the economic rationale, which certainly is true. I mean, it's working. People are making money from this. And that's not a bad thing. The question is whether it's permissible to make it exclusive. Your Honor, there is – Maybe we ought to get to your colleague, because you've used your time and this is really his area. Okay. Well, we plunged into the middle of the constitutional question of is it enough, as Judge Sotomayor said, that it produces money, that that's enough justification for allowing the grant of a monopoly over any kind of activity to the tribes as long as it's conducted on the land? I think it is in this context. I think it's very important to keep in mind that – Well, it's not a question of this context. The question was a general question of is it sufficient that it produces income that benefits the tribes greatly and allows them to have self-government and independence. Is that enough of a reason to allow a monopoly over any form of use of the land or manufacturing or whatever the activity would be that's limited to Indian land? Then the answer is no. Okay. So what's different about gambling or this particular grant of a monopoly? I think probably the most obvious difference in our mind is that nobody questions that the state could continue to prohibit these forms of games throughout the state for all people under its police powers. That distinction does not exist with respect to automobile manufacturing or automotive dealerships. There probably would not be a rational basis for the state to say we need to protect the public from ubiquitous automobile dealerships. Sure, sure there would be. I mean, why couldn't a state say we're so interested in the environment that we won't allow any manufacturing that produces more than X amount of pollution and that defines away a huge class of manufacturing operations? They could do that. And then could also turn around and say the only place where polluting industry is allowed is on Indian land. That's fine with us. And then someone else. I mean, is that okay? That might be that might be a rational approach for a state to take. But then we're getting away into other areas and not viewing the issue as purely an economic issue, which is what I thought the hypothetical was. There the state would be incorporating other factors into what would be rational. What I was suggesting is that there probably would not be any rational basis for the state to refuse individuals this economic activity. What is California's rationale? I mean, the federal rationale is to is to encourage economic development in among Indians. But it seems to me that California's rationale is is to make money for itself. It's through the compacts, through the compact and its rationale. What is its rationale for prohibiting to others where presumably it could equally make money, except that it perhaps finds it too immoral to allow it anywhere else? Well, that that may be the point. The fact that there is a constitutional prohibition, and there historically has been a constitutional prohibition against casino style gaming in California. We view this issue as in the district court's terminology, an issue of cooperative federalism. You have a very unique situation with respect to gaming developing nationally, but particularly in California. In 1988, Congress passes the Indian Gaming Regulatory Act and establishes that gaming has some sort of preferred status on Indian lands, because in the 500 year history of our relations with Indian tribes, Congress has determined that really gaming is unique in its ability to provide funds for economic development. Now, the creation of that preference federally established a conflict between the federal government on the one hand and the state on the other, which had historically had this prohibition against casino style gaming. Excuse me, what did you say was unique there? You said something was unique. What is it? I'm talking about the context and I'm trying to address judges. Are you saying running a casino is a unique Indian interest? No, certainly not. Well, it is in this context under IGRA. The appellants have argued that there's nothing unique about, there's nothing traditionally unique about casino gaming. The appellants have tried to limit what is uniquely Indian to the kinds of activities that we would associate with tribal Indians at this time of European contact. You can see the casinos are not unique as far as Indians are concerned. You can see that. Well, it's not a traditional activity, certainly, but it is certainly, it is an activity that affects uniquely Indian interests. It affects the interest, but it's not unique in itself. Well, I think it is unique. It is a unique activity with respect to tribes. And I think the congressional findings with respect to the benefits that uniquely accrued Indian tribes through gaming demonstrate that. Now, the conflict that I was about to mention with respect to the state policy, on the other hand, led to years of conflict between Indian tribes and the state that has been well-recorded in the recent Coyote Valley decision involving the Rumsey litigation, the negotiation of the Palacon Pacts, the passage of Prop 5 striking down. Now, what California sought to achieve in Proposition 1A was to set that history behind us. Well, I don't think anyone is quarreling from a constitutional perspective with the idea that California could either reject Class 3 gaming altogether or accept Class 3 gaming altogether or have some kind of regulation that says it can happen only on the weekends or something. But the issue is this exclusivity question within the state as a policy of the state is approved by the federal government. Right. We view Proposition 1A as within the purposes of IGRA. And I think the existence of IGRA is very important to this consideration. Well, for purposes of this, we're assuming that you're right, that IGRA thinks this is perfectly fine. That really doesn't answer the constitutional question, though, does it? Well, if we view this IGRA and Proposition 1A in terms of cooperative federalism, IGRA generally the political relationship that exists between the federal government and tribes, mostly to the exclusion of the state, IGRA is something of an invitation to the state to enter that political relationship for the limited purpose of regulating gaming. Proposition 1A is an acceptance of that invitation. So you're saying it's a compromise? Yes. And does it make it a compromise? Does that make it constitutional? Well, I think the fact that Proposition 1A is designed to fit within the federal construct gives it essentially the umbrella protection and establishes that it is in furtherance of the federal trust responsibility. And so then you get into that establishes Proposition 1A as a political classification rather than a racial one. And so the rational basis test applies. Well, I understand the rational basis for allowing gaming to go forward on Indian land. What I don't understand, and it's probably just me, but what I don't understand is the rationale for refusing that same regulated opportunity to others on state land or on land within the state. It was born of a respect for the traditional historic constitutional prohibition against casino-style gaming throughout the state. And the basis for drawing the distinction, I think, is that principally Indian lands are remote from population. So we still think it's immoral, but we want the money. Well, the state doesn't actually get much money at all. Well, you're trying to get money. You just haven't done too well in your negotiations. It's an issue for another day. But I don't think we can say that Proposition 1A and their compacts were motivated by a desire for money from Indian lands. So how ultimately is that different from my example of a state saying, we think it's immoral to pollute, but those Indian reservations are far away and it's okay over there. We won't let anybody else have Indian land within our state. Can they do that? Well, I think that probably would be an appropriate policy choice for the state in terms of separating the majority of the population from pollution. And if the Indian tribes and the federal government and their superintendents over Indian affairs found it acceptable to have pollution on Indian lands, then that would be a compromise solution under a concept of cooperative federalism. Are you saying pollution is a unique Indian interest? Is that what you're saying? No, Your Honor, I'm not. Then what are you saying? Well, if I'm not saying that pollution is a unique Indian interest, but if Congress were to pass a statute similar to Indian Gaming, the Indian Gaming Regulatory Act governing automotive dealerships or automotive production, and that it would be limited, that the conduct of that activity would be limited to Indian tribes and on Indian lands pursuant to tribal ordinance, then there had to be a compact negotiated between the tribal government and the state. I don't see where that plays into the equal protection argument really from the state's perspective because it's the state constitutional provision that's the issue that says you can have gaming here but not there. Just looking at a state law that says you can have factories here but not there, I don't see why the analysis of those two things would be different at all, with or without a compact. Well, I think it plays into the equal protection argument insofar as it establishes that Proposition 1A affects a political rather than racial classification. But that may be a slightly... I don't disagree with you on that. And I've tried to make a hypothetical that doesn't disagree with that either. So the question then is, where is the state's rational basis? Right. I mean, presuming in my example even that maybe they'll hire non-Indians nearby to work on it and so forth. It's not really racial. I think the state has a legitimate interest in furthering the federal objectives here under the construct of cooperative federalism. And it also has a legitimate interest in separating the majority of its population from the omnipresence of casino gaming and its ill effects everywhere in the state. So those would be the two rational bases for the classification. I see my time... just before my time is up, I would like to make one point with respect to the statutory construction argument. I'd like to refer the Court to the operative section here in 2710 D1B, that gaming activities are lawful on Indian lands only if the activities are located in a state that permits such gaming for any purpose. The Court seemed to be struggling with the notion that Proposition 1A and the compacts would fit within the plain language of IGRA. And I would suggest to the Court that this gaming for any purpose language, the any purpose language, would allow the Court to rule that Proposition 1A was passed for the purpose of meeting the requirement of IGRA, this requirement of IGRA. Thank you very much. Thank you, Justice. The Court is asking the right questions. And the question, the right question is, can the Congress, can the state balkanize the economy? Can the Congress or the state say that only tribes can engage in a particular form of economic activity, be it pro sports or wineries or casinos? The record shows that casinos in California are approaching a $5 billion a year business. This is a major section of the California economy. And we submit that there is no principle rationale that allows the state or Congress to say that this $5 billion exercise can only be conducted by Indian tribes. What is your specific response to the rationales that were just advanced, that is, the twin goals of separating the majority of the population from the ill effects of the activity and furthering the federal goal of economic development for Indian tribes? Are those rational? Are they sufficient? I think that they are not sufficient rationales. I mean, the separation idea sort of advances a red light district theory of equal protection jurisdiction, that you can discriminate in favor of tribes for less favored activities like gambling or perhaps some other things that we could think about. But that type of discrimination is appropriate, but discrimination in more traditional forms of economic activity is not. I see nothing in the cases that would allow that type of distinction. In California, while some games are prohibited, gambling is a lawful business. It can be conducted in the center of cities. It is not something that is pushed to the outer limits. So I see no justification at all for distinguishing between disfavored forms of economic activity and favored forms of economic activity. In terms of the other part of your question, Judge Graber, whether economic success is a justification for this type of discrimination, I think that that cannot be a sufficient justification because that would justify any type of discrimination. I mean, the record shows that tribes have for example, and restaurants. Surely, just because those types of economic activities are successful for the tribes, that doesn't provide economic stability. That doesn't mean that the state or the federal government could say that only tribes could operate hotels or run restaurants. That cannot be a sufficient justification. That would mean that contrary to what Cayetano said, contrary to what this court said in Malabad just a few weeks ago, that Mankari does not have a limited reach. Anything goes. The floodgates are open. I had just a couple of points about statutes. That's good because you've got about a minute and 15 seconds. Well, I will try to speak more quickly than my reason allows, Judge Reinhart. There's another provision of statutory interpretation that I think should be focused on, and that is the one that was set forth in the Williams case where the court said that normally one would think that if Congress really is going to provide a monopoly to tribes to carve out. No, I didn't say tribes. I said a monopoly to Indians over an activity. Now, that again was if you want to give the Native Americans or whatever the natives in Alaska the exclusive right to deal with reindeer throughout the state, then you think Congress would have said so. The point I was making is that if Congress was going to give anybody a monopoly, individual Indians or tribes, one would think, the court said in Williams, that Congress would have said so. That is a canon of statutory construction that I think is applicable here. Well, the difference here is that Congress isn't actually doing the requiring or the permitting itself, and here all they're doing is giving states permission to do something. Is it equally clear that they would have to explicitly tell the states that they can do it as it would be if they were doing it themselves? Excuse me for interrupting, Judge Greby. If Congress intended that the states be allowed to give tribes a monopoly in casino gaming, Congress would have said so. Congress didn't intend that, did not intend that. They intended that there be fair competition, free market competition, a level playing field, a balancing here of economic interest. Well, you know, there is a school of thought that you shouldn't pay too much to what Congress intended, other than what you can find in the words of the statute. And here, if the words of the statute are ambiguous, then the rule of construction that applies, and I understand you think it's balanced by the rule of if it raises a constitutional question, but it's very hard to tell when Congress said in a statute, you know, that if it's permitted for any person or any purpose, that that did not include a constitutional provision permitting it for Indians. That may raise a constitutional question. With all deference, Judge. The language of the statute in itself may guarantee equal treatment, but it also may permit more. Judge, the statute really wouldn't make any sense if that's the way it should be interpreted. The statute then would mean gambling can be permitted if it's legal, and it's legal if tribes can do it. That's a completely circular reading of the statute. Congress did not intend that. If you read the next part of the statute, it tells the state that it must negotiate with the Indians unless you had a state provision that made it legal to do so. You don't have to. If the state bans it entirely, they're not obligated to negotiate. If the state permits it, then the state is required to negotiate. Judge Reinhart, there are two provisions of note in the statute. One is the state permission requirement, and the other one is the compact requirement. Now, we read the compact requirement to say that there must be negotiation if the permission requirement is fulfilled. If one says that whenever there is a compact and there must be a state statute that allows the governor the compact, whenever that is fulfilled, the permission requirement also is fulfilled, and the permission requirement has no independent meaning. The statute can't be read that way, intelligibly. It can't be read that way, particularly when you add on to it the legislative history that makes it absolutely clear that no monopoly was intended, that fair competition is what the Congress was intending. Thank you, counsel. Thank you. The case is submitted. The court will stand in recess for the day. Thank you all very much for the argument.
judges: Reinhardt, Graber, Rhoades